This was an action in the court of common pleas for’ damages for causing the death of George Goiter, a child three and one-half years old.
The petition alleged that the street railway company wrongfully caused the death of the child; that the company negligently operated its car in this, to-wit, that the car was. run at a high rate of speed; that the company did not provide the car with proper guard rails, and that the company was negligent in not seeing the child and stopping the car before running over the child.
On the trial of the case, at the conclusion of the plaintiff’s evidence, on motion of the defendant company, the court instructed the jury to return a verdict for the defendant.
Tn doing this it is claimed in this court that there was error to plaintiff's prejudice. The evidence tended to 3how this state of facts: On the 26th day of March, 1895, Mrs. Goiter, the mother of George Colter, had her three children with her doing some shopping in a store at the southeast corner of Elm and Elder streets, in the city of Cincinnati. The other children, besides George, were a daughter, fourteen, named Katie, and a baby named Freddie. They all came out of the store together, the mother carrying some bundles and Katie carrying the baby, while George was walking. The mother and Katie walked west on Elder street to Elm,and turned south on Elm, until they had gone ten or twelve steps south of the corner on Elm street, a distance say of thirty-one feet south of the corner; at this point the mother, missing George, turned and discovered him within two feet of the east car track, about two feet north of the south crossing of Elder and Elm. At the time she discovered the child in this position the car which afterwards run over him and killed him was right opposite Mrs. Goiter — that is, the front part of the car was. *384 The distance of the car at this time and point was about fifty feet from where the car finally struck the child, There was evidence that tended to show that the motorman ■saw the child just as he left the curb stone to go into the middle of the street, and that the child was toddling along at the usual speed of a child of that age. There was also evidence tending to prove that the car was going at a speed not to exceed four miles an hour, and that it could have been stopped, at the rate it was then going, in a distance of twelve to fifteen feet.
It seems to us that in directing the jury to return a verdict for the defendant the court invaded the province of the jury. No rule of law is better settled in Ohio than that where there is any evidence which tends to establish the plaintiff’s case, it is for the jury to decide in the first instance. We firmly believe in the wisdom of such a rule of law. The judge has power enough without encroaching upon the powers of the jury, and we are not prepared to say that the judgment of judges on matters of fact is likely ■to be more correct than that of juries. At any rate, the law is too well established in Ohio to admit of any question, and speaking for ourselves we express the hope that it will never be changed.
In this case the evidence before the jury tended to show that the motorman saw this child at a point of danger when the car was more than thirty feet away; and when, according to his own testimony, he could have stopped the car within twelve to fifteen feet. If the motorman saw the child at that distance, and the child was in a dangerous situation as to his moving car, it certainly was his duty to have stopped his car ana avoided the accident. There was other and different evidence in the cause, some of which tended to show that the motorman did not see the child until the car ■got within six or seven feet of the child, but which was to ■be believed was foi the jury to pass on. It seems to us *385 quite clear from the evidence in the record that we would not reverse a judgment for the plaintiff on the ground that it was against the evidence.
W. M. Eames, and Robertson & Buchwalter, for Plaintiff in Error.

Foraker, Outcalt & Prior, contra.

We think the court should have received the evidence of Meyers, on page 55 of the record. It was competent to show the actual measurements although made after the occurrence, if it was shown that the witness Hespus was standing in the same place at both times, Of course his vision must be the same, and its correctness could hardly be doubted.
For these reasons the judgment will be reversed and the-cause remanded for further proceedings.